1  PATRICIA BARBOSA (SBN 125865)
2  KEVIN BAYLEY (SBN 218070)
   **BARBOSA GROUP**
3  16531 Bolsa Chica St., #205
   Huntington Beach, CA 92649
4  Tel: (714) 465-9486
5  PBarbosa@barbosagrp.com
   Kbayley@barbosagrp.com
6
7  *Attorney for Plaintiff,*
   CHRISTIE RUDDER
8
9  *(Appearances continued on following page)*

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  CHRISTIE RUDDER, individual;      ) Case No.: 8:13−cv−01610−JLS−DFM
                                      )
14              Plaintiff,            ) *(Assigned to Hon. Josephine L. Staton,*
                                      ) *Ctrm. 10A)*
15  vs.                               )
                                      )
16                                    ) **Civil Rights**
    YARD HOUSE USA, INC.; DARDEN      )
17  INC.; GREENLAW PARTNERS, LLC;     )
    GREENLAW MANAGEMENT, INC.;        ) **JOINT REPORT FOLLOWING**
18  MADISON MARQUETTE RETAIL          ) **MEETING OF COUNSEL**
19  SERVICES; and DOES 1 through 10,  ) **PURSUANT TO FED. R. CIV. P. 26(f)**
    inclusive,                        )
20                                    )
                                      )
21              Defendants,           )
22                                    )
                                      )
23                                    )
                                      )
24                                    ) **Scheduling Conference Hearing:**
25                                    ) Date:        January 31, 2014
                                      ) Time:        1:30 p.m.
26                                    ) Courtroom: Santa Ana Courtroom 10A
27                                    )
28  _____      )

---

JOINT REPORT OF COUNSEL (FRCP 26(f))
8:13−cv−01610−JLS−DFM                                          1

1

**JEFFER MANGELS BUTLER & MITCHELL LLP**

2

MARTIN H. ORLICK SBN. 083908
mho@jmbm.com

3

STUART K. TUBIS SBN. 278278
skt@jmbm.com

4

Two Embarcadero Center, Fifth Floor

5

San Francisco, California
94111-3824

6

Telephone: (415) 398-8080

7

Facsimile: (415) 398-5584
Attorneys for Defendants Yard House USA, Inc. and Darden Inc.

8

9

**BUCHALTER NEMER**

10

GLENN P. ZWANG (SBN: 112295)
IVO KELLER (SBN: 245909)

11

A Professional Corporation

12

55 Second Street, Suite 1700
San Francisco, CA 94105-3493

13

Telephone: (415) 227-0900

14

Facsimile: (415) 227-0770
Email: gzwang@buchalter.com

15

Attorneys for Defendants GREENLAW PARTNERS, LLC, GREENLAW

16

MANAGEMENT, INC., and MADISON MARQUETTE RETAIL SERVICES, INC.

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to this Court's Order, Local Rule 26 and Federal Rule of Civil Procedure, Rule 26(f), the parties present the following Joint Statement.  On January 14, 2014, counsel for the parties met telephonically to discuss the issues in this case. Present were, Patricia Barbosa and Kevin Bayley for the Plaintiff; Martin Orlick for Defendants YARD HOUSE USA, INC. and DARDEN INC.; and Glenn Zwang for Defendants GREENLAW PARTNERS, LLC, GREENLAW MANAGEMENT, INC., and MADISON MARQUETTE RETAIL SERVICES, INC.

**A. <u>STATEMENT OF THE CASE</u>**

<u>Plaintiff's Statement</u>

Plaintiff, CHRISTIE RUDDER, brings this action alleging that Defendants discriminated against her on the basis of her physical disabilities in violation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*.("ADA"), and California civil rights laws and regulations (Cal. Civ. Code § 51; and Cal. Health & Saf. Code §§19955 et seq.), in the manner in which they own, operate, and or lease the Yard House restaurant at "The Triangle" in Costa Mesa, California and the public parking and paths of travel to the Yard House Costa Mesa. Plaintiff is a qualified disabled person who requires the use of a wheelchair for mobility in places of public accommodation due to her permanent physical disabilities, as the result of injuries and strokes.  Plaintiff is a full-time wheelchair user who is unable to walk or stand unassisted.

Plaintiff is a long-time disability advocate who is passionately committed to pursuing the goal of mainstreaming persons with disabilities by obtaining readily accessible public facilities in places of public accommodations, such as the Yard House.  On or about April 4, 2013, Plaintiff visited the Yard House Costa Mesa to enjoy the food, drink and atmosphere available there.  It was her birthday and she was looking forward to sampling different beers, eating fine food, watching sports, and meeting fellow diners.

However, the physical barriers to get into the Yard House Costa Mesa and the

barriers inside of the Restaurant make her visit difficult, uncomfortable and embarrassing for her.  When arriving at The Triangle, Plaintiff had difficulty locating an accessible parking space that would provide her with a path of travel to the Yard House.  She resorted to parking in a regular space which had some extra clearance room for customers to reach the elevator.  She then made her way to the Yard House.  Plaintiff was alone and wanted to sit at the bar area so that she could enjoy the company of other patrons.  She found that instead of being led to accessible bar seating, the hostess had to ask the manager if Plaintiff could sit in the lowered section of the bar.  When she reached the lowered portion of the bar, she found why the hostess had not directly seated her at the bar.  She found that in that space the wait staff had disposed of old drinks, placed carafes, drinks and dirty dishes, and the bartender poured left-over drinks into a drain at the head of the accessible seating space.  The seating was cleared off for Plaintiff, but the smell of the drain continued during her meal, as well as the wait staff continuing to use the section to leave dirty dishes.    During her meal, Plaintiff needed to use the restroom, but found that the path of travel to the restroom area was blocked by patrons and chairs in the path of travel.  Staff directed her to exit the restaurant through a side entrance, travel around the outside of the restaurant, re-enter through the main entrance and then proceed to the restrooms.  This path of travel was several times longer than the direct route inside in the restaurant.  Plaintiff felt she would have to move persons to use the restroom or go outside and come in so as not to disturb the patrons standing in the path of travel inside the restaurant.  Plaintiff left feeling segregated, unwanted and embarrassed by her attempt to celebrate her birthday in a place that did not want her to business.

Plaintiff wishes to enjoy the same amenities and facilities offered to the general public at the Yard House-Costa Mesa and therefore she seeks to have the public parking, paths of travel and goods and services offered at the Yard House Costa Mesa readily accessible to and usable to her and other persons with mobility

disabilities. The barriers encountered when Plaintiff visits the Yard House-Costa Mesa include the following: <u>Parking</u>: insufficient in number, incorrectly configured, located and without an accessible path of travel to the entrances; <u>Signage</u>: a lack of signage indicating the accessible entrance; <u>Restaurant</u>: inaccessible seating, incorrectly configured restrooms and dispensers; inaccessible lowered bar counter; and discriminatory policies of locating wheelchair users in a section of the bar where servers place dirty dishes, drain unused drinks, a failure to reserve the lowered section of the bar for use by persons with disabilities who cannot use the high table and stools, and for a failure to maintain an accessible path of travel within the restaurant for wheelchairs.

Plaintiff seeks to have Defendants remove barriers and modify their policies to ensure readily accessible facilities and access to the Yard House Costa Mesa's goods and services. She also seeks to obtain damages under California law for the discrimination suffered, the deterrence she faces in not visiting the Yard House Costa Mesa when she would like due to the known barriers, and reasonable attorneys' fees and costs for enforcing provisions of the ADA and California civil rights laws. The disdain shown by Defendants in the manner in which the facilities lack access and the policies are discriminatory, is also demonstrated in Defendants' Answers to the Complaint. Without any supporting evidence, all Defendants have listed Affirmative Defenses stating that Plaintiff has Unclean Hands. Yardhouse Defendant specifically alleges that Plaintiff "is deliberately targeting multiple locations over the same or purely technical, non-existent "access barriers", which do not impact Plaintiff's ability to receive full and equal access to Defendants' goods, services and accommodations." Unless Defendants amend their Answers to eliminate this Affirmative Defense, Plaintiff will aggressively move to discover any basis for these scurrilous allegations for what are meritorious claims of discrimination. Although attacking civil rights plaintiffs is the defense of choice for many defense counsel, Plaintiff's Counsel are civil rights attorneys who take seriously allegations that this

action was not brought in good faith or represents a fraud on the court and will vigorously defend any allegations of unclean hands or bad faith.  As courts have recently found, the tactic of attacking ADA plaintiffs and their counsel is troubling, and may say more about defense counsel than the plaintiffs. "Defendant's attempts to argue that this case was abusive or brought in bad faith also fail. These arguments are representative of a troubling trend in which disability access defendants attack the motives of plaintiffs and their counsel in nearly every case brought to enforce the right to equal access guaranteed by the ADA and California statutes." *Kittok v. Leslie's Poolmart, Inc.,* 687 F.Supp.2d 953, 958 (C.D. Cal. 2009); see also *Id. at 959* ("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.") (internal quotation marks omitted); *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. Cal. 2010).  Defendants have the choice to move this case toward reasonable settlement, or wage a battle of intentions that Plaintiff is prepared to counter.

### Defendants YARD HOUSE USA, INC. and DARDEN INC.:

Although this case involves a person with a disability, it does not involve disability discrimination.  Yard House USA, Inc. ("Yard House") has operated a fully accessible and welcoming restaurant without issue for many years at the location in question.

Unfortunately, the lawsuit at hand exemplifies misuse of the ADA perfectly. On the day of her alleged visit, Plaintiff was fully able to attend the Yard House restaurant, eat a meal and enjoy all the same amenities and lively atmosphere that any other patron would be able to do. Plaintiff alleges that she had difficulty finding an accessible parking space (note Plaintiff did not allege that such a space was not present). Plaintiff then chose to park in a spot with extra clearance that allowed ample room for her to exit her vehicle and enter the restaurant.  Plaintiff's counsel has

1    acknowledged that Yard House is a tenant with no control over the common area
2    parking.  After a simple verbal request, Plaintiff was provided a fully accessible spot
3    at the bar and served her meal and drinks as any other patron would receive. Plaintiff
4    claims that she was discriminated against because activity at the area she ate was
5    high. However, Plaintiff is not able to point to any disability standard or ADA
6    requirement governing the level of noise and activity at the seating area of a sports
7    bar.

8         Crowds of people are not regulated by the ADA.  Successful sports bars are
9    crowded by their nature and can be crowded at any time.  Plaintiff, like all other
10   patrons, must endure the same crowds.

11        Plaintiff then claims to have been deterred from getting to the bathroom
12   because patrons were alleged in her way. Even assuming this is true, encountering
13   some difficulty maneuvering through people at a busy bar to go to the restroom is
14   common as to all bars with restrooms. Plaintiff never claims to have excused herself
15   or politely asked anyone in her way to kindly move aside as almost anyone would
16   have done. Plaintiff does not cite any specific code or dimensional regulation that was
17   violated. Most interestingly, Plaintiff does not claim to have been unable to go to the
18   restroom *because* of her disability.

19        Plaintiff did not encounter discrimination. Plaintiff encountered the same
20   general annoyances that anyone might when attending a busy sports bar. It is not
21   appropriate, and certainly not legally valid, for Plaintiff to transfer the sentimentality
22   of discrimination onto ordinary inconveniences of life.  Yard House welcomes
23   customers with disabilities and is sympathetic to Plaintiff for the annoyances she
24   encountered and would like to make every visit an enjoyable one, Plaintiff has
25   initiated a legal action in federal court. Accordingly, legal grounds must be
26   established and proven for any such claims to be successful.
27   //
28   //

**Defendants GREENLAW PARTNERS, LLC, GREENLAW MANAGEMENT, INC., and MADISON MARQUETTE RETAIL SERVICES, INC.:**

Defendants have denied the substantive allegations of the complaint. To the extent that the common areas in the shopping center fail to comply with ADA or California disability laws, Defendants assert various affirmative defenses. Unfortunately, the complaint is unclear as to alleged ADA violations in the parking lot.  Defendants only know that plaintiff allegedly encountered some difficulty parking, but was able to park.  Defendants have retained an ADA consultant to evaluate parking at the shopping center, and will be in a better position to respond on the merits when the consultant's report is completed.  Should there be any ADA violation with respect to parking or other common areas, Defendants with remedy it. Had plaintiff notified Defendants that she encountered these difficulties before suing them, any problems that may exist would have been corrected without the need for this lawsuit.

## B. Legal Issues

### a. Undisputed Legal Issues

(1)     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, for violations of Title III of the ADA, and for supplemental jurisdiction, attendant and related causes of action, brought under California law.

(2)     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

(3)     The Triangle and the Yard House Costa Mesa are places of public accommodation covered by Title III of the ADA and California Civil Codes 51. et seq.

### b. Disputed Legal Issues

1.  What is the financial and contractual relationship between the Defendants, and what responsibility does each of the parties have towards Plaintiff to ensure that The Triangle and the Yard House Costa Mesa offers their goods and services in a non-

discriminatory manner to Plaintiff and other persons with mobility disabilities.

2.  Were the public facilities at The Triangle and the Yard House Costa Mesa "readily accessible to and usable by" persons with mobility disabilities in compliance with ADA standards and California building standards at the time of Plaintiff's visits on April 4, 2013?

3.  What alterations, renovations or new construction has taken place, if any, at The Triangle and the Yard House Costa Mesa since July 1, 1982 under California law and since January 26, 1992 under the ADA, that would have triggered full accessibility in the area of remodel, and/or path of travel upgrades from the designated accessible parking spaces, restrooms serving the area of remodel, public rights of way, the bus stops, and the exterior and interior paths of travel to the public entrances areas;

4.  What "readily achievable barrier removal" has been required, if any, since January 26, 1992 to the present to provide disabled access to the goods, and services offered to the general public by Defendants, in a readily accessible manner?

5.  What reasonable modifications in policies, practices and procedures, if any, were required under the ADA and the corresponding ADAS regulations to provide Plaintiff the goods and services offered by Defendants in a "readily accessible" manner, including maintaining accessible facilities and features, accessible bar seating, accessible parking spaces, accessible paths of travel to and from the parking structure to the entrance of the Yard House Costa Mesa for persons with   mobility disabilities?

6.  What injunctive relief, if any, is required following a finding of violation of California Civil Code § 51, et seq. or Title III of the ADA?

7.  What monetary damages, if any, are required for violations of Title III of the ADA and California Civil Code § 51, et seq.?

//

//

8.   What inconveniences did Plaintiff encounter based on disability discrimination as opposed to the inconveniences the general public experiences whether or not they are disabled?

9. Why should Plaintiff be afforded any relief when the inconvenience as she allegedly encountered were the same for all customers?

10. If Yard House modifies the dimensional requirements of state codes and federal and guidelines, how is Plaintiff the victim of disability discrimination because the restaurant is a popular sports bar?

## C. **Damages**

Plaintiff's claims for damages are for violation of California civil rights statutes and regulations, pursuant to Civil Code § 51, et seq.  Section 52 provides for minimum statutory damages of $4,000 "for each and every offense" of section 51 upon a showing that the Plaintiff suffered difficulty, discomfort or embarrassment, different facilities with different functions may also count as separate violations of Section 51.   Plaintiff may also seek damages under section 52 and 54.3 for separate violations of Title III of the ADA, such as a failure to remove readily achievable barriers or modify discriminatory policies and practices that injured Plaintiff and her ability to use the public accommodations in a "readily accessible" manner.

It is the policy of Plaintiff's counsel not to make a demand for damages until after the injunctive relief portion of the case is resolved to ensure meeting the public purposes of the ADA and California laws, and to avoid a conflict of interest between monetary demand and demand for injunctive relief.  Plaintiff's counsel has significant experience in settling ADA cases and obtaining significant damages for clients, including obtaining treble damages for a single discriminatory event. (See *Acosta v. NuVision Federal Credit Union, et al.*, USDC, Central District, CV 12-03547-MMM)  In this case, as in all cases handled by Plaintiff's counsel, we first seek to remove barriers and eliminate discriminatory policies for all disabled persons

before discussing damages.  The amount of damages demanded will be based on discriminatory experiences and/or the number of times that Plaintiff has been to, or has been deterred from visiting The Triangle or the Yard House Costa Mesa due to known physical barriers, the difficulty, embarrassment and physical and emotional pain experienced in past visits, as well as the number of separate ADA violations, and the different facilities offered by Defendants.   Plaintiff's counsel has in past cases obtained damages as low as $10,000 for statutory damages and more than $500,000 in settlement for an individual, without significant physical injury.  Depending on the facts that may come out during discovery, Plaintiff may also have a claim for trebled or punitive damages against Defendants.

**Defendants YARD HOUSE USA, INC. and DARDEN INC.:**

Yard House believes that Plaintiff has not been discriminated against because of her disability therefore she is not entitled to any relief.


### D. Insurance

**Defendants YARD HOUSE USA, INC. and DARDEN INC.:**

As of the present, Yard House and Darden have not received any disbursements, proceeds, payments, indemnifications or contributions from any insurance carrier.

**Defendants GREENLAW PARTNERS, LLC, GREENLAW MANAGEMENT, INC., and MADISON MARQUETTE RETAIL SERVICES, INC.:**

As of the present, Defendants have not received any disbursements, proceeds, payments, indemnifications or contributions from any insurance carrier.


### E. Motions

**Plaintiff's Statement:** Plaintiff has named and served all known owners, operators and lessors of the subject facilities.  Plaintiff will diligently seek to ensure that all necessary parties are included in the Complaint to obtain a full and fair

resolution of this case, and will file to amend the complaint as soon as the correct parties are ascertained.  In addition, the parties have agreed to an early inspection of the public facilities in this case, so that Plaintiff can file a First Amended Complaint to fully comply with Fed. R. Civ. Pro. 8 notice requirements as modified by the Ninth Circuit.  Defendants' Answers have alleged that Plaintiff has filed an unmeritorious complaint in bad faith.  Plaintiff will vigorously defend against such allegations, including filing a motion requesting Rule 11 sanctions, if Defendants fail to provide supporting facts for these allegations, or refuse to amend their Answers. Plaintiff will also seek to file a Motion for Partial Summary Adjudication on Liability if the parties are not able to settle this matter within a reasonable time.

**Defendants YARD HOUSE USA, INC. and DARDEN INC.:**

Defendants maintain that no violation of the ADA or disability law occurred. If the matter is not resolved in the short-term future, a dispositive motion will be filed.

**Defendants GREENLAW PARTNERS, LLC, GREENLAW MANAGEMENT, INC., and MADISON MARQUETTE RETAIL SERVICES, INC.:**

Defendants maintain that no violation of the ADA or disability law occurred. If the matter is not resolved in the short-term future, a dispositive motion will be filed.

### F.  Manual For Complex Litigation

The parties do not believe that this case will require use of the manual for complex litigation.

### G.  Status of Discovery

The parties propose to comply with Rule 26 disclosures without procedural changes, and have discussed the documents to be exchanged.  The parties do not propose limiting discovery, or conducting it in phases.  The parties have also discussed seeking an early mediation in hopes of resolving all or most of the claims in this matter.

**Plaintiff's Statement:**

Plaintiff has engaged an expert in Federal and State civil rights disability standards.  The expert is also an architect and well-versed in construction and can identify and evaluate the physical barriers and also issue of modification of policies to propose injunctive relief remedies.

**Defendant YARD HOUSE USA, INC. and DARDEN INC.:**

Yard House has consulted with an ADA expert and California Accessibility Specialist (CASp) regarding the location in question. Yard House and Darden will call upon their expert's services and opinions as needed.

**Defendants GREENLAW PARTNERS, LLC, GREENLAW MANAGEMENT, INC., and MADISON MARQUETTE RETAIL SERVICES, INC.:**

Defendants have consulted with an ADA expert and California Accessibility Specialist (CASp) regarding the location in question. Greenlaw Partners, LLC; Greenlaw Management, Inc.; and Madison Marquette Retail Services, Inc. will call upon their expert's services and opinions as needed.

**H. Discovery Plan**

**Plaintiff's proposed discovery:**  Plaintiff has not yet propounded written discovery, but will do so shortly, in regards to the following issues: affirmative defenses raised in the Answers to the Complaint; information regarding the relationship between all Defendants as owners, operators, lessors or lessees of the subject facilities; construction and/or remodel history of the subject facilities, and any plans for proposed renovations; information regarding any past disability complaints or discriminatory policies; evaluation and identification of access barriers at the subject facilities prior to the filing of the Complaint, and; any barrier removal conducted after the filing of the Complaint; any barrier removal Defendants did not do because they determined it was not "readily achievable" to do so; the "overall financial resources" and/or operational difficulties of Defendants preventing "readily

achievable" barrier removal; and information regarding Defendants' policies and procedures for providing their goods or services to persons with mobility disabilities at the subject facilities.  Plaintiff anticipates no more than ten (10) depositions at this time to discover the above-cited information.  Plaintiff's proposed dates for discovery and expert discovery deadlines are given in Attachment A below.

### Defendants YARD HOUSE USA, INC. and DARDEN, INC.:

Defendants will propound written discovery, including requests for admissions, form and special interrogatories, and requests for production of documents, if the matter is not resolved in the future and such discovery appears that it will be useful.

Defendants will take the deposition of Plaintiff and others who may have first-hand information or testimony relevant to the claims of the case.

### Defendants GREENLAW PARTNERS, LLC, GREENLAW MANAGEMENT, INC., and MADISON MARQUETTE RETAIL SERVICES, INC.:

Defendants will initiate discovery if there is no early resolution.

### I. Discovery Cut-Off

Plaintiffs propose a discovery cut-off date of December 1, 2014.  The Parties have set forth proposed trial and discovery dates for this matter as Attachment A to this joint report.

### J. Dispositive Motions

**Plaintiff's position:** If the parties are unable to reach a settlement either informally or with the assistance of a mediator, Plaintiff will file a Motion for Partial Summary Adjudication as to the issue of liability and a Motion for Permanent Injunction to stop the continuing discrimination based on physical barriers and discriminatory policies.  Possible motions in limine are not known at this time.

//

//

**Defendants YARD HOUSE USA, INC. and DARDEN INC.:**

If the matter is not resolved in the short-term future, Yard House and Darden will file a dispositive motion.

**Defendants GREENLAW PARTNERS, LLC, GREENLAW MANAGEMENT, INC., and MADISON MARQUETTE RETAIL SERVICES, INC.:**

Defendants anticipate dispositive motions if there is no early resolution.

### K. Settlement

Plaintiff's counsel first step toward settlement is to make a site inspection of the facilities and make a demand for injunctive relief. Plaintiff's counsel will work with Defendants to schedule a site inspection of the subject facilities with their experts to identify, measure, and photograph the barriers for settlement purposes, and to prove liability if necessary. Plaintiff's counsel will then make a demand for injunctive relief to begin settlement discussions of Plaintiff's claims. Plaintiff requests referral to a private mediator within 90 days of Plaintiff's demand for injunctive relief.

**Defendants YARD HOUSE USA, INC. and DARDEN INC.:**

Yard House and Darden remain committed to resolving this dispute and continuing to ensure a fully accessible restaurant for all patrons, with and without disabilities. However, Plaintiff has not demanded a reasonable sum for a fair resolution of the matter thus far. Defendants are not prepared to offer more than a nominal amount for the everyday inconveniences Plaintiff claims to have suffered. Nonetheless, Defendants remain hopeful that a fair and expedient resolution of the matter may be achieved.

**Defendants GREENLAW PARTNERS, LLC, GREENLAW MANAGEMENT, INC., and MADISON MARQUETTE RETAIL SERVICES, INC.:**

Defendants seek to quickly and efficiently obtain information on plaintiff's claim, determine whether plaintiff encountered barriers to access due to an ADA

violation, and move the case into a mediation.

### L. Trial Estimate

Plaintiff estimates a trial of 3-5 days and requests a jury trial.  Plaintiff anticipates calling seven witnesses at trial.

### M. Trial Counsel

**PLAINTIFF CHRISTIE RUDDER:** Patricia Barbosa and Kevin Bayley will be trial counsel for Plaintiff.

**DEFENDANTS YARD HOUSE USA, INC. and DARDEN INC.:** Martin Orlick and Stuart Tubis will be trial counsel for these Defendants.

**DEFENDANTS GREENLAW PARTNERS, LLC; GREENLAW MANAGEMENT, INC.; and MADISON MARQUETTE RETAIL SERVICES.:** Glenn Zwang will be trial counsel for these Defendants.

### N. Independent Expert or Master

The Parties do not believe it will be necessary for the court to appoint an independent expert or master.

### O. Other Issues

The parties are not aware of other issues at this time.

Dated: January 17, 2014  **BARBOSA GROUP**

By:  /s/ PATRICIA BARBOSA
PATRICIA BARBOSA
Attorney for Plaintiff CHRISTIE RUDDER

1

2    Dated: January 17, 2014   **JEFFER MANGELS BUTLER & MITCHELL LLP**

3                                      By:    /s/ MARTIN ORLICK
4                                             MARTIN ORLICK
                                              Attorneys for Defendants YARD HOUSE USA, INC.
5                                             and DARDEN INC.

6

7

8    Dated: January 17, 2014   **BUCHALTER NEMER**

9                                      By:    /s/ GLENN ZWANG
                                              GLENN ZWANG
10                                            Attorneys for Defendants GREENLAW
11                                            PARTNERS, LLC, GREENLAW MANAGEMENT,
                                              INC., and MADISON MARQUETTE RETAIL
12                                            SERVICES, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHEDULE OF PRETRIAL AND TRIAL DATES-ATTACHMENT A**

CASE NAME: *Rudder v. Yard House, et al.*

| Matter | Time | Weeks before Trial | Plaintiff(s) Request | Defendant(s) Request | Court Order |
|---|---|---|---|---|---|
| Last Date to Amend Pleadings or Add Parties | | 60 days after sch. Conf. | **March 1, 2014** | | |
| Fact Discovery Cut-Off | | 19 | **September 17, 2014** | | |
| Last Day to Serve Initial Expert Reports | | 17 | **October 1, 2014** | | |
| Last Day to File Motions (Except Motions in Limine) | | 17 | **October 1, 2014** | | |
| Last Day to Serve Rebuttal Expert Reports | | 13 | **October 29, 2014** | | |
| Last Day to Conduct Settlement Proceedings | | 10 | **November 19, 2014** | | |
| Expert Discovery Cut-off | | 9 | **November 26, 2014** | | |
| Pretrial Conference, LR 16; Hearing on Motions in Limine | 1:30 p.m. | 3 | **January 6, 2015** | | |
| Exhibit Conference (Friday at 3:30 p.m. | 3:30 p.m. | 1 | **January 24, 2015** | | |
| Jury Trial (3-5 days) | | | **January 28, 2015** | | |